**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jeremy R. KENDRICKS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 1, 2011.
Filed Oct. 12, 2011.

Demetrius W. Fannick, appellant, pro se.

Frank P. Barletta, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

Jeremy R. Kendricks, Appellant, appeals from the judgment of sentence following his conviction of murder in the third degree.[1] We affirm.

On September 20, 2008, Appellant was arrested and charged with criminal homicide for his involvement in the shooting death of Kirk Lipscomb (victim) at the Bull Run Tavern in Plymouth Borough, Luzerne County. Appellant filed pre-trial motions which were heard on April 6 and 8, 2010. On April 16, 2010, the trial court issued findings of fact and conclusions of law disposing of Appellant's pre-trial motions.

Trial commenced on May 3, 2010. During its case-in-chief, the Commonwealth called four witnesses, David Green (Green), Sherman Anderson (S. Anderson), Victor Anderson (V. Anderson)[2], and Neil McMahon (McMahon), all of whom were eyewitnesses to the shooting. On May 7, 2010, following a jury trial, Appellant was convicted of murder in the third degree. On July 8, 2010, Appellant was sentenced to a term of not less than 240 months nor more than 480 months' incarceration. On July 19, 2010, Appellant filed post-sentence motions, which were supplemented on August 24, 2010. These motions were denied by the trial court on October 4, 2010. This timely appeal followed.[3]

Appellant raises five issues on appeal. We have re-ordered Appellant's claims for ease of disposition.

1. Whether the trial court improperly denied [Appellant's] Motion in Limine to preclude the admission of two autopsy photographs of the [victim] in that the photographs were inflammatory and their evidentiary value was far outweighed by their prejudicial [e]ffect?

2. Whether the trial court improperly permitted the Commonwealth to introduce evidence of [Green] and [S. Anderson's] out-of-court identification of [Appellant] through the use of a photo line[-]up which [was] unduly suggestive and presented a substantial likelihood of misidentification?

3. Whether the trial court improperly permitted Commonwealth witnesses [McMahon] and [V. Anderson] to make in-court identification of [Appellant] when the in-court identification has no independent origin sufficiently distinguishable from the unlawful photo line[-]up that was presented to the witness[es] prior to the trial?

4. Whether the trial court erred in failing to charge/instruct the jury on the "unreasonable belief self-defense" section of the Standard Voluntary Manslaughter Instruction?

5. Whether the verdict was against the weight of the evidence and/or was

---

* Retired Senior Judge assigned to Superior Court.

1. 18 Pa.C.S. § 2502(c).

2. S. Anderson and V. Anderson are not related. N.T., 5/3/2010, at 305.

3. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

insufficient to sustain the verdict of guilt?

Appellant's Brief at 7.

■ The first three issues challenge the trial court's admission of certain evidence at trial. Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa.Super.2003).

Appellant claims that the trial court erred in denying Appellant's motion *in limine* to preclude admission at trial of two color photographs taken during the victim's autopsy. Appellant's Brief at 19.

■ When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Tharp*, 574 Pa. 202, 830 A.2d 519, 531 (2003) (citation omitted).

■ The color photographs at issue depict two separate gunshot wounds to the body of the victim. The first photograph shows gunpowder stippling around the entry of the first of two gunshot wounds; the second photograph shows the angle of a second wound to the victim's chest. In both photographs, the body has been cleaned of blood, dirt or tissue. Instantly, the trial court determined the autopsy photographs were not inflammatory and

had probative value because each would aid the jury's understanding of the testimony of the forensic pathologist called at trial. Trial Court Opinion, 1/31/2011, at 7. In so holding, the trial court noted it was "satisfied that the photographs have probative value; that they are not inflammatory as such; and that the probative value would be greatly diminished were the photographs to be allowed merely in black and white[.]" N.T., 4/16/2010, at 5. Based on our review of the photographs, we agree.

The photographs at issue are relevant to enhance the jury's understanding of the location of the victim's injuries and the stippling effect on the victim's chest which shows that the victim was shot at close range. There is no suggestion that the photographs were unnecessarily gruesome or inflammatory. Thus, the trial court did not err in determining that the probative value of introducing this evidence to demonstrate that the victim was shot at close-range outweighed the potential prejudicial effect of the photographs. *See Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 622–623 (2001) (quoting *Commonwealth v. Jacobs*, 536 Pa. 402, 639 A.2d 786, 789 (1994)) ("Even where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs"); *see also Commonwealth v. Tharp*, 574 Pa. 202, 830 A.2d 519, 531–32 (2003) (introduction of photographs was proper even though testimonial evidence to demonstrate injuries was available).

Appellant next contends that the trial court erred in allowing the Commonwealth to introduce evidence of the out-of-court identification of Appellant made by Green and S. Anderson. Specifically, Appellant contends that a photo array presented separately to Green and to S. Anderson was suggestive because "the individual photos were not similar and clearly suggested to

the witnesses which individual to identify." Appellant's Brief at 11. Moreover, Appellant claims that all subsequent identifications stemming from the array are tainted.

 Our Supreme Court has instructed that a photographic identification is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 112 (2004) (citation omitted).

> Whether an out-of-court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. We will not suppress such identification unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Commonwealth v. Burton,* 770 A.2d 771, 782 (Pa.Super.2001) (citations and quotations omitted). The variance between the photos in an array does not necessarily establish grounds for suppression of a victim's identification. *Id.* "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116, 1126 (2001). "[E]ach person in the array does not have to be identical in appearance." *Burton,* 770 A.2d at 782. The photographs in the array should all be the same size and should be shot against similar backgrounds. *Commonwealth v. Thomas,* 394 Pa.Super. 316, 575 A.2d 921 (1990).

Instantly, following the death of the victim, officers from the Plymouth Township Police Department conducted interviews of patrons in the tavern when the incident occurred, including Green and S. Anderson. After Appellant was identified as a suspect, an eight photograph array was generated and shown to the four eyewitnesses.[4] N.T., 5/3/2010, at 86.

Green testified at trial that he told officers that he was in the tavern the night the victim was shot. *Id.* at 368. He said that he saw Appellant in the bar that evening and had seen Appellant there before. *Id.* at 367–368. Green further testified that he, Appellant, and the victim were involved in a physical altercation, and that during this incident Appellant fired a small revolver at Green and the victim. *Id.* at 371, 376–378. Green stated that he was close enough to the situation that he was able to dive on the gun once Appellant dropped it and was also shot by Appellant during the scuffle over the dropped firearm. *Id.* at 378. Green indicated that he looked Appellant "right in the face" during the incident and was one hundred percent positive Appellant was the gunman. *Id.* at 378–379. During the evening of September 20, 2008, Green was shown the photo array by Officer Fox and identified Appellant as the individual who shot both him and the victim. *Id.* at 384–386, 388.

Also on September 20, 2008, Pennsylvania State Trooper Lisa Brogan showed S. Anderson the photo array generated by J–NET. *Id.* at 128–129. At trial, S. Anderson testified that he was present in the tavern on the night in question; he had seen Appellant there in the past; and, he intervened directly in the confrontation between Appellant and the victim. *Id.* at

---

4. Plymouth Township Police Officer Jeffery Fox testified that the photo array was produced using the Pennsylvania Justice Network (J–NET) computer service, which generated seven random photographs from a state-wide database based on descriptive information of Appellant entered into the program by Officer Fox. N.T., 5/3/2010, at 85–86.

163, 159–160, 168–171. He further testified that he observed Appellant twice fire a gun during the confrontation. *Id.* at 171. When Officer Brogan presented him with the photo array, S. Anderson also identified Appellant as the shooter. *Id.* at 182–183.

The trial court concluded that both Green and S. Anderson had ample opportunity to observe Appellant at the time of the shooting, that the photo array generated by the J–NET program was not itself unduly suggestive, nor did it present substantial likelihood for misidentification, and that no evidence was present to suggest the manner in which the array was administered to the witnesses was unduly suggestive. Trial Court Findings of Fact, 4/16/2010, at 6 (unnumbered).

■ Likewise, our review of the certified record reflects that the photographs used in the array were not unduly suggestive. *See* Commonwealth Exhibit 1. The array at issue here contains eight photographs of men who appear to be of the same race as Appellant, all approximately the same age, with similar complexions and facial characteristics. The photographs are arranged in two rows of four pictures each, and Appellant's picture appears in the number 6 position. The photographs were all the same size and appear to have been taken against similar backgrounds. Regarding Appellant's argument that he is the only individual in the array with light-colored eyes or color on his shirt, we note that the photo array was administered to Green and S. Anderson as a black and white copy. N.T., 4/6/2010, at 265, 273 and N.T., 5/3/2010, at 132. Moreover, there is nothing in the record that supports Appellant's contention that the procedure employed by the officers administering the photo array was inappropriate. Thus, we conclude that the array supports the trial court's conclusion that the array is not unduly suggestive so as to create a likelihood of misidentification. Therefore, Appellant has failed to establish that the trial court abused its discretion in this regard.

Appellant claims that the trial court erred in allowing two Commonwealth witnesses, McMahon and V. Anderson, to make in-court identifications of Appellant. Appellant argues that the witnesses' in-court identifications were tainted by a prior unlawful identification. Appellant's Brief at 16.

On October 14, 2008 Officer Fox showed McMahon the J–NET photo array containing Appellant's photograph. McMahon positively identified Appellant as the shooter. On February 27, 2009 and again on March 13, 2009, V. Anderson was shown a number of photo arrays, including one containing Appellant's photograph. V. Anderson also identified Appellant as the man who shot the victim. In his motion *in limine* Appellant challenged the administration of the photo array to McMahon and V. Anderson, arguing that both identifications were invalid because Appellant's counsel was not present at the time identification was made. The trial court subsequently denied admission of that evidence at trial as Appellant was represented by counsel at the time the photo arrays were shown to McMahon and V. Anderson, but Appellant's counsel was not present when the photo arrays were administered. However, the trial court permitted McMahon and V. Anderson to make an in-court identification of Appellant, if asked to do so at trial finding "that the Commonwealth has established by clear and convincing evidence that such identification had an independent origin sufficiently distinguishable from the unlawful photo lineup procedure." Trial Court Findings of Fact, 4/16/2010, at 3, 7 ¶¶ 12–15. (unnumbered). We agree.

McMahon is the owner of the Bull Run Tavern. N.T., 5/3/2010, at 234. At trial McMahon testified that he was behind the bar assisting the bartender on the night of the shooting. *Id.* at 235. He described the bar as well-lit. *Id.* at 240–241. He testified that he was approximately 16 feet away from Appellant when he heard shots fired, and identified Appellant as having a silver revolver in his hand immediately thereafter. *Id.* at 237–239, 378. He testified that the entire incident lasted between 15 and 20 seconds, but that Appellant looked at him after firing the shots. *Id.* at 272–275. McMahon acknowledged speaking with law enforcement on October 13, 2010, wherein he stated he was "100 percent sure" Appellant was the shooter because of the unique light color of his eyes. *Id.* at 255. He made an in-court identification of Appellant. *Id.* at 237. McMahon testified repeatedly that he was able to identify Appellant based on the shape and color of his eyes. *Id.* at 277–278.

V. Anderson testified that he was present at the tavern on September 20, 2008. *Id.* at 306. He testified that he was approximately seven to eight feet away from the verbal altercation between the victim and Appellant. *Id.* at 311–312. His cousin alerted him to the fact that Appellant had a gun. *Id.* He further testified that Appellant was the man who shot the victim, that Appellant dropped the gun after firing the initial shots, and that another patron in the bar shot Green during the struggle over the dropped firearm. *Id.* at 313–314. V. Anderson also testified that he encountered Appellant and Appellant's associate, Michael Madera (Madera), after the incident in January of 2009 while all three men were incarcerated at the Luzerne County Correctional Facility. *Id.* at 317. V. Anderson stated that he recognized Appellant as the man who shot the victim, and Madera as the individual who shot Green. *Id.* He further testified that he

was twice assaulted by Madera while in jail after telling a mutual acquaintance that he observed Appellant and Madera commit the shooting at the Bull Run Tavern. *Id.* at 317–320. On February 29, 2009, V. Anderson made a written statement to police implicating Appellant as the gunman. *Id.* at 331. At trial, V. Anderson made an in-court identification of Appellant. *Id.* at 312.

When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification "had an origin sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Abdul–Salaam,* 544 Pa. 514, 678 A.2d 342 (1996); *see also Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985). The factors a court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 380.

Here, both McMahon and V. Anderson had sufficient opportunity to observe Appellant during the incident. Although, by all accounts, the shooting took place over a matter of seconds, each man testified that a verbal altercation preceded the shooting, drawing the men's attention to Appellant. Further, McMahon expressed 100 percent certainty that Appellant was the gunman based on Appellant's unique eye color and shape. Likewise, V. Anderson testified that he recognized Appellant while incarcerated months after the incident and was assaulted once he re-

vealed Appellant's connection to the shooting at the tavern. Based on the totality of the circumstances we hold that there was a basis independent from the tainted pretrial photo array that would support admission of McMahon and V. Anderson's in-court identification. Therefore, the trial court did not err in this regard.

 Appellant next claims that the trial court erred in failing to instruct the jury on the "unreasonable belief self-defense" section of the Pennsylvania Suggested Standard Criminal Jury Instruction for Voluntary Manslaughter. Appellant's Brief at 7; PA–JICRIM 15.2503A (2006).[5] "In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Thomas,* 904 A.2d 964, 970 (Pa.Super.2006). "It has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. McCloskey,* 441 Pa.Super. 116, 656 A.2d 1369, 1374 (1995).

The Suggested Standard Jury Instruction for Voluntary Manslaughter provides that paragraph five, related to unreasonable belief self-defense, is "to be given only if the facts of record support" such an inference. PA–JICRIM 15.2503A, (2006). Paragraph five provides,

5. The reducing circumstance of a defendant acting under an unreasonable belief that the circumstances of the killing were justified applies where:

 a. the defendant actually believed that [he] [she] [a third party] was in immediate danger of death or serious bodily injury [or kidnapping or sexual intercourse compelled by force or threat] from *[name of alleged victim]* at the time [he] [she] used deadly force, but [his] [her] belief was unreasonable in light of the facts as they appeared to [him] [her] at the time;

 b. the defendant did not provoke the use of force by the alleged victim by engaging in conduct that showed it was [his][her] intent to cause death or serious bodily injury to the alleged victim; and,

 c. the defendant did not violate [his][her] duty to retreat from the place, surrender possession of something, or comply with a lawful demand, as I explained those terms when I described to you the justification defense.

Therefore, you can find malice and murder only if the Commonwealth proves beyond a reasonable doubt one of the following elements:

 a. the defendant did not actually believe that [he] [she] [a third party] was in immediate danger of death or serious bodily injury [or kidnapping or

---

5. The crime of voluntary manslaughter is defined as follows:

 (a) **General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

 (1) the individual killed; or

 (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

 (b) **Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

18 Pa.C.S. § 2503.

sexual intercourse compelled by force or threat] from *[name of alleged victim]* at the time [he] [she] used deadly force. Note that the unreasonableness of the defendant's belief is not the issue here, as it was when I explained justification to you. The question is whether the defendant actually believed such an immediate danger existed at the time [he] [she] used deadly force, and to prove malice through this element, the Commonwealth must prove that the defendant did not actually hold such a belief; or,

b. the defendant provoked the use of force by the alleged victim by engaging in conduct that showed it was [his] [her] intent to cause death or serious bodily injury to the alleged victim; or,

c. the defendant could have avoided the use of deadly force by [retreating from the place] [surrendering possession of something] [or] [complying with a lawful demand], as I previously defined [this] [those] concept[s] for you when I discussed the defense of justification.

PA–JICRIM 15.2503A, ¶ 5 (2006).

■ Instantly, Appellant argued that the jury could infer that he acted in self-defense based upon evidence presented that Appellant was surrounded by several men, possibly armed, who closed in on him and attacked him. N.T., 5/3/2010, at 918. The trial court rejected this contention and determined that inclusion of paragraph five into its jury instructions was unwarranted based on the facts presented at trial. Trial Court Opinion, 1/31/2011, at 9. We agree.

All four of the Commonwealth eyewitnesses place the firearm in the hands of Appellant. Moreover, the favorable defense witnesses testified that they did not witness the shooting, but merely saw a physical altercation between Appellant,

victim, and Green, during which shots were fired. *Id.* at 770, 776, 804. The defense witnesses do not allege that victim, Green, or anyone else involved in the physical altercation had a weapon of any sort. Based on our review of the testimony, even when viewed in the light most favorable to Appellant, Appellant was not entitled to an instruction on unreasonable belief of self-defense. Thus, we conclude that the trial court did not err in denying the instruction.

We now turn to Appellant's claim that the evidence was insufficient to sustain his conviction of third-degree murder and that the verdict was against the weight of the evidence. In *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000), our Supreme Court discussed the standards of review applicable to both of Appellant's arguments:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. . . . An allegation that the verdict is against the weight of the evidence is

addressed to the discretion of the trial court.

A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. . . .

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Id.* at 751–52 (footnote and citations omitted).

Our Crimes Code defines third-degree murder as follows:

[T]hird-degree murder is a killing done with legal malice but without the specific intent to kill required in first-degree murder. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty. Malice exists where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury.

*Commonwealth v. Kellam,* 719 A.2d 792, 797 (Pa.Super.1998) (citations and quotation marks omitted). Section 2301 of the Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S. § 2301.

Appellant argues that the evidence presented by the Commonwealth was unreliable and contradictory, and, therefore, his conviction for murder in the third degree was "based on pure conjecture." Appellant's brief at 22. In support of his argument, Appellant claims that the testimony of Commonwealth's expert witness that all four bullets recovered from victim and Green were fired from the same firearm is contradicted by testimony that multiple individuals in the bar possessed, and fired, weapons that evening. *Id.* Further, Appellant contends that the testimony of V. Anderson and Green regarding the identity of the man who shot Green was contradictory. *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, as we must, it is clear that Appellant engaged in a confrontation with the victim and Green. As discussed at length above, four eyewitnesses testified at trial that Appellant pulled out a revolver during that confrontation and fired it at the victim. N.T., 5/3/2010, at 170–172, 235–239, 312–131 371, and 377–379. Moreover, we note that even if other tavern patrons possessed firearms, as Appellant alleges, that evidence does not negate the testimony that Appellant fired the fatal shots or acted in gross disregard of the fact that his actions might create a substantial risk of death or serious bodily injury. We conclude that the evidence presented is sufficient to support Appellant's conviction.

With regard to his challenge to the weight of the evidence, Appellant reiterates essentially the same arguments he presented in his challenge to the sufficiency of the evidence. The trial court found that "[t]he variances in testimony do not shock this [c]ourt's conscience, but rather illustrate typical inconsistencies in eyewitness testimony. The testimony presented

was competent proof in which a jury could find [Appellant] guilty of the crime of Murder in the Third degree." Trial Court Opinion, 1/31/2011, at 12. Accordingly, noting our discussion of the sufficiency of the evidence, *supra,* we conclude that the trial court did not abuse its discretion in denying Appellant's request for a new trial based upon the weight of the evidence.

Judgment of sentence affirmed. Jurisdiction relinquished.