J-A27030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FABIAN PABON | : | |
| | : | |
| Appellant | : | No. 2371 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006708-2016

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  MARCH 1, 2021**

Appellant Fabian Pabon appeals *nunc pro tunc* from the judgment of sentence entered on September 22, 2017, following his convictions for possession with intent to deliver a controlled substance (PWID) and conspiracy,[1] among other related charges.  Appellant challenges the sufficiency of the evidence supporting both convictions.  He also contends the sentencing court failed to consider several mitigating factors, which led to the imposition of a manifestly excessive sentence.  We affirm.

The trial court described the facts underlying Appellant's conviction as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 903(a)(1), respectively.

On April 30, 2016, Philadelphia Police Sergeant Eric Brooks, an experienced narcotics officer, together with other police officers, began a surveillance in the 100 block of East Huntingdon Street in Philadelphia, an area known for drug sales, after receiving information that illegal drug-related activity was occurring in the 100 block of East Huntingdon Street. From this location inside an unmarked police vehicle, which gave him a view of both East Huntingdon and Water Streets, Sergeant Brooks observed Appellant and a second male named Anibal Sanchez sitting together in the 2500 block of Water Street. Soon after commencing his surveillance, Sergeant Brooks observed a woman later identified as Samantha Hilton walk up to Appellant and Sanchez and briefly spoke to Appellant. The Sergeant then saw Ms. Hilton hand Appellant an indeterminate amount of United States currency after which Appellant handed Ms. Hilton unidentified items that he retrieved from inside the front of his sweat pants. Ms. Hilton then left the area and was arrested. Police recovered a blue plastic bag with a Superman symbol on it containing crack cocaine from her incident to arrest.

After Ms. Hilton departed, Sergeant Brooks saw Appellant walk to a residence located at 108 East Huntingdon Street and enter it. He remained inside for no more than five minutes and upon exiting the residence, he walked over to Mr. Sanchez. Appellant spoke briefly with Sanchez and handed him unknown objects. Appellant then left the area and was not seen again by the sergeant.

After Appellant departed, Sanchez engaged in two transactions with . . . Michael McDermott and . . . Larissa Baynard that were similar to the one Appellant previously engaged in with Hilton. Both McDermott and Baynard were apprehended and were found to be in possession of small plastic bags containing crack cocaine identical to the one seized from Hilton.

Following the last transactions, Sergeant Brooks ordered members of his back up team to arrest Sanchez. When the officers approached Sanchez he ran inside of 2539 Water Street where he was apprehended. Police found in his possession four plastic bags each of which had Superman symbols on it and $61.00 that were identical to the symbols on the other bags seized from Hilton, McDermott, and Baynard.

Prior to April 30, 2016, specifically on April 22, 2016, Sergeant Brooks assisted in a drug surveillance approximately a mile from

Water and East Huntingdon Streets that culminated in the arrest of Jamul Alomar's brother and another male. Incident to these arrests, police seized . . . [b]ags of crack cocaine that had Superman symbols on them.

On May 3, 2016, during the early evening, Philadelphia Narcotics Officer Jason Seigafuse began a surveillance in the area of the 100 block of East Huntingdon Street. Officer Seigafuse observed Appellant exit 108 East Huntingdon Street and engage in a transaction with a white male that involved the exchange of small items for United States currency. Subsequent thereto, Officer Seigafuse saw [A]ppellant exit 108 East Huntingdon Street and leave the area on foot. Officer Seigafuse indicated that police did not stop Appellant because the investigation, which involved drug sales in the area was still occurring.

He also observed another male named Khlid Konce enter and exit east 108 East Huntingdon Street and engage in drug related activity. Konce was stopped and recovered from him . . . eight bags stamped with a Superman symbol on them.

Finally, Officer Seigafuse observed Alomar leave 108 East Huntingdon Street and drive away. Police stopped him and recovered pills, powder cocaine, United States currency, and a key for 108 East Huntingdon Street.

Based on the foregoing activities, police obtained a search warrant for 108 [E]ast Huntingdon Street. It was executed on May 4, 2016, and resulted in the seizure of $4,499.00, numerous packets filled with crack cocaine stamped with . . . Superman symbols that resembled the bags recovered from Konce, a digital scale, plastic bags, a tally sheet, correspondence for Alomar, and approximately 176 grams of uncut cocaine.

Officer Seigafuse . . . obtained an arrest warrant for Appellant [and p]olice arrested Appellant on May 18, 2016.

Trial Ct. Op., 11/15/19, at 2-4 (record citations omitted).

Following his arrest, Appellant filed a motion to suppress, which the trial court denied. He then proceeded to a stipulated bench trial incorporating the

preliminary hearing and suppression records.[2]  The trial court found Appellant guilty of PWID and conspiracy as well as other related offenses.[3]  The trial court sentenced Appellant within the standard range of the sentencing guidelines to an aggregate term of three to six years' incarceration, followed by four years' probation.

Appellant filed a motion for reconsideration of his sentence, arguing his sentence was excessive.  The trial court denied the motion.  Appellant did not file a notice of appeal.

On July 6, 2018, Appellant filed a *pro se* Post Conviction Relief Act (PCRA)[4] petition.  The PCRA court appointed counsel, who filed an amended petition seeking the reinstatement of Appellant's direct appeal rights.  The PCRA court issued an order restoring Appellant's direct appeal rights *nunc pro tunc*.  Appellant thereafter filed a notice of appeal, and the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement.  Appellant complied and timely filed a 1925(b) statement.  The trial court filed a responsive opinion.

Appellant presents two issues for our review:

1. Whether the verdict was insufficient as a matter of law, due to the inconsistency and insufficiency of testimony, and whether the

---

[2] **See** N.T. Trial, 4/6/17, at 16.  Appellant was tried along with his co-defendant, Jamil Alomar.

[3] Appellant was also convicted of intentional possession of a controlled substance, 35 P.S. § 780-113 (a)(16), and possession of drug paraphernalia, 35 P.S. § 780-113 (a)(32).  However, the trial court did not impose further penalty on these convictions.

[4] 42 Pa.C.S. §§ 9541-9546.

elements of the crime were sufficiently proven given the facts alleged at trial?

2. Whether the [trial c]ourt erred in denying the Motion to Reconsider as the sentence imposed was unreasonable and manifestly excessive?

Appellant's Brief at 8.

Appellant's first issue challenges the sufficiency of the Commonwealth's evidence to support his conviction for PWID. Specifically, Appellant argues the Commonwealth failed to establish actual possession because police did not recover a controlled substance from his person. *See* Appellant's Brief at 22. Appellant also highlights the fact that police did not arrest him immediately after he was allegedly seen selling drugs. *See id.* Lastly, Appellant asserts that the Commonwealth failed to present sufficient evidence linking him to the residence at 108 East Huntingdon Street, because he did not have a key to the residence on his person and there was no evidence that he resided there. *Id.*

When determining whether evidence is sufficient to sustain a conviction, our standard of review is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Kendricks*, 30 A.3d 499, 508 (Pa. Super. 2011) (citation omitted).

In drug possession cases, the Commonwealth must prove that a defendant knowingly or intentionally possessed a controlled substance. *See* 35 P.S. § 780-113(a)(30); *see also Commonwealth v. James*, 46 A.3d 776, 779-80 (Pa. Super. 2012). The Commonwealth can establish possession by "proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation and quotation marks omitted), *appeal denied*, 202 A.3d 42 (Pa. 2019).

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Id*. at 36-37 (citations, brackets, and quotation marks omitted).

"[T]he power and intent to control the contraband does not need to be exclusive to the defendant," as "constructive possession may be found in one

or more actors where the item [at] issue is in an area of joint control and equal access." ***Commonwealth v. Vargas***, 108 A.3d 858, 868 (Pa. Super. 2014) (*en banc*) (citation omitted).

> For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept. However, [a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances . . . [and] circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.

***Id.*** (citations and quotation marks omitted).

"To sustain a conviction for [PWID], the Commonwealth must establish the defendant knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to . . . deliver it." ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa. Super. 2019) (citations omitted), *appeal denied*, 217 A.3d 790 (Pa. 2019); ***see also*** 35 P.S. § 780-113(a)(30).

Here, the trial court addressed the evidence supporting Appellant's PWID conviction as follows:

> Drawing all inferences in favor of the Commonwealth, as the law requires, it is clear that the evidence was sufficient to sustain the verdict finding Appellant guilty of the charge of PWID. Appellant was twice observed handing off small objects filled with what later was learned was crack cocaine in exchange for United States currency, activity which was indicative of drug dealing. In addition, police observed Appellant going into and exiting a residence that clearly was the site of a drug operation and then was observed handing items to Sanchez who was found to be in

possession of small bags identical to the ones Appellant exchanged for United States currency with two drug purchasers.

Given the foregoing, the fact that Appellant was not found in possession of drugs, was arrested two weeks after the drug sales he made were consummated, and the other factors Appellant claims makes the evidence insufficient are irrelevant for purposes of a sufficiency analysis, which, as noted, requires reviewing the evidence in a light most favorable to the Commonwealth. Applying that standard, it is clear that the evidence was sufficient to sustain the PWID charge and is suggested that Appellant be denied relief with respect to that claim.

Trial Ct. Op. at 7.

Here, as discussed above, Sergeant Brooks and Officer Seigafuse both observed Appellant engage in the sale of crack cocaine. *See* N.T. Prelim. Hr'g, 3/28/17, at 9-10. Sergeant Brooks testified that on April 30, 2016 he observed Appellant accepting money from Hilton in exchange for small items. *See id.* at 9-10. Appellant then spoke briefly with Sanchez and handed him unknown objects. *See id.* at 10. Immediately following the interaction, police arrested Sanchez and recovered Ziploc bags, containing crack cocaine that were similar to the one Appellant gave Hilton. *See id.* at 10-11.

In addition, Officer Seigafuse testified that on May 3, 2016 he observed Appellant speaking with an unknown male, enter the residence at 108 East Huntingdon Street, and then return to pass small items to the unknown buyer in exchange for money. *See id.* at 28-29. A search warrant executed at 108 East Huntingdon Street, subsequent to the sale, resulted in the recovery of scores of Ziploc bags of crack cocaine and money. *See id.* at 31-32. The fact that police did not arrest Appellant immediately thereafter is of no

consequence. Accordingly, we conclude there was sufficient evidence to establish that Appellant had possession and control over the narcotics found on Hilton and those recovered from the residence at 108 East Huntingdon Street. *See Vargas*, 108 A.3d at 868.

Viewing all of the evidence and the inferences drawn from the evidence in the light most favorable to the Commonwealth, as the verdict winner, we agree with the trial court that there was sufficient evidence to find that Appellant possessed crack cocaine with the intent to distribute it. Therefore, we conclude that the evidence was sufficient to sustain Appellant's PWID conviction. *See Kendricks*, 30 A.3d at 508.

Appellant also argues that the evidence was insufficient to support his conviction of conspiracy. *See* Appellant's Brief at 22.

A conspiracy conviction requires the Commonwealth to establish "that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove

the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Id*. at 996-97 (citation omitted).

The trial court addressed Appellant's second sufficiency claim as follows:

[The] evidence showed that Appellant interacted with several persons clearly involved in a drug selling operation. In addition, on April 30, 2016, police observed Appellant enter 108 East Huntingdon Street, the site of a drug operation, and exit it within five minutes at which time he handed Sanchez small items. Sanchez was thereafter arrested and found in possession of bags that resembled the one Appellant gave Hilton. Clearly, there was an agreement [between Appellant and his co-conspirators] to engage in drug related activity and overt acts. . . . and, therefore, it is suggested that Appellant's claim with respect to this issue be denied.

Trial Ct. Op. at 8-9.

In viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that the evidence presented was sufficient to convict Appellant of criminal conspiracy. The testimony at the preliminary hearing established that there was a criminal agreement between Appellant and Alomar. *See* N.T. Prelim. Hr'g, 3/28/17, at 28-30, 31-32, 38. Police observed Appellant entering and exiting Alomar's 108 East Huntingdon Street residence, where police officers later recovered cash and scores of Ziploc bags of crack cocaine. *See id*. at 31-32, 38. Appellant also actively participated in Alomar's drug-selling enterprise by selling crack cocaine to

various individuals. *See id.* at 9-10, 29-30. As such, it was reasonable for the trial court to infer that Appellant conspired with Alomar to engage in the sale of crack cocaine. *See McCall*, 911 A.2d at 996-97. Hence, Appellant's first issue fails. *See Kendricks*, 30 A.3d at 508.

Appellant next challenges the discretionary aspects of his sentence and argues that his sentence is manifestly excessive. *See* Appellant's Brief at 19. He faults the trial court for failing to adequately examine mitigating evidence such as his background, character, and rehabilitative efforts. *See id.* Appellant contends that such evidence would have shown that he deserved a reduced sentence. *See id.* at 20.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citations omitted). Before reaching the merits of a discretionary aspects issue, this Court must conduct a four-part test to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his or her issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

*Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa. Super. 2018) (citation and brackets omitted). "To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a

post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted).

Here, Appellant preserved his sentencing claim in his post-sentence motion and timely filed a notice of appeal *nunc pro tunc*. He also included a Pa.R.A.P. 2119(f) statement in his brief. Furthermore, Appellant's sentencing claim raises a substantial question for our review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (holding "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citation omitted)). Therefore, we will address Appellant's claim.

Our standard of review is governed by the following principles:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch***, 936 A.2d 515, 517-18 (Pa. Super. 2007) (citation omitted).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002) (citation omitted). "In particular, the court should refer to the defendant's prior

criminal record, his age, personal characteristics[,] and his potential for rehabilitation." *Id.* (citation omitted). Where the sentencing court had the benefit of a presentence investigation report (PSI), we assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Moreover, when a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

Here, the trial court addressed Appellant's sentencing claim as follows:

> [I]t is clear that no abuse of discretion occurred here. This [c]ourt did review the [PSI], which set forth Appellant's life history and failed attempts to rehabilitate himself and also carefully listened to Appellant's counsel's recitation of mitigating circumstances that counsel believed called for the imposition of a shorter sentence. It also heard from Appellant during his exercise of his right of allocution that he had a job offer and a new child. Unfortunately for Appellant though, in addition to the mitigating evidence presented, this [c]ourt also heard that Appellant had been arrested while awaiting sentencing in this case. That fact convinced this [c]ourt that all of the assertions indicating that Appellant had turned his life around and could lead a law-abiding life if given a chance to, were not credible and that appellant posed a danger to the citizens of Philadelphia that only could be mitigated by the imposition of a lengthy period of incarceration.

> Finally, Appellant's sentence was not excessive in light of the seriousness of the underlying criminal matter, which concerned his participation in a sophisticated drug selling operation. Moreover, Appellant's criminal conduct herein and in his other criminal matters established to this [c]ourt that Appellant had had many other opportunities to turn his life around and did not do so. Simply put, his criminal record and his arrest while awaiting sentence manifested that he was disposed to continue to commit

crimes and that the only way to see that he was no longer engaging in criminal activity was to incarcerate him for a significant period of time. Accordingly, because the foregoing discussion shows that this [c]ourt considered all relevant factors in deciding upon Appellant's sentence, it is submitted that no abuse of discretion occurred and that the judgment of sentence should be affirmed.

Trial Ct. Op. at 10-11.

Based on our review of the record, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence. The sentencing record confirms the trial court reviewed Appellant's PSI. *See* N.T. Sentencing Hr'g, 9/22/17, at 4-5. We presume that the trial court considered all mitigating factors, including Appellant's background, character, and rehabilitative efforts. *See Devers*, 546 A.2d at 18. Furthermore, as noted by the trial court, Appellant's sentence was not excessive in light of the criminal conduct at issue and his arrest on new charges while awaiting sentencing. Therefore, Appellant's challenge to the discretionary aspects of his sentence fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/21

- 14 -