J-S44008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHIKUYO BAYETE | |
| Appellant | No. 1150 WDA 2014 |

Appeal from the PCRA Order July 2, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000473-2012

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED SEPTEMBER 16, 2015**

Appellant Chikuyo Bayete appeals, *pro se*, from the order entered in the Erie County Court of Common Pleas, dismissing his petition for relief pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Korrine Nicole Carson ("Korrine"), Jordan Tyler Tracy ("Jordan"), and Jarod Tracy ("Jarod") testified that on November 21, 2011, they were socializing in Jordan's apartment around 2:00 a.m.  N.T., 9/12/12 at 17, 19.  After smoking some marijuana, the three decided to leave the apartment to get something to eat.  *Id.* at 20.  Korrine opened the door and encountered two

---

[1]  42 Pa.C.S. §§ 9541-9546.

armed, masked men, wearing dark clothing, one of whom pushed her to the floor and tased her. *Id.* at 20-22. One of the men pistol-whipped and tased Jordan. *Id.* at 43, 44. According to Jordan, one of the men requested that the music be turned up, and it was turned up. *Id.* at 45. According to Jarod, one of the men pointed a gun at his head and asked him to turn the T.V. off, and he turned off the T.V. *Id.* at 76. Jarod then ran out of the apartment and went to a neighbor's house. *Id.* at 78. One of the men pointed a gun at Jordan and told him he wanted his safe.[2] *Id.* at 46-47. The armed men took the safe and left the apartment. *Id.* at 48.

Jordan heard a gunshot and looked outside. *Id.* at 51. He saw one of the two armed men, later identified as Appellant, dragging the other armed man, who had been shot and was later identified as Appellant's brother, Shanti Bayete. *Id.* at 51, 86. Appellant then lifted his mask and Jordan recognized him as the older brother of his friend, Jeremiah. *Id.* at 51, 56. Appellant then ran down the street. *Id.* at 54.

Patrol Officer James Cousins responded to the scene for a disturbance of one shot heard. *Id.* at 84. Officer Cousins encountered Jordan and Korrine by the body, claiming that they had been robbed by the victim and that they could identify the other robber. *Id.* at 84-87. Officer Nick Stadler and Officer White also responded to the scene and encountered Appellant

---

[2] $3000.00 along with marijuana were later found in the safe.

running East from the scene, wearing all black, with blood on him, toward their patrol car. *Id.* at 99, 101, 102. The officers apprehended Appellant and brought him to the crime scene, where Jordan, Jarod and Korrine identified Appellant as one of the robbers. *Id.* at 90.

According to Appellant, his brother had gone to Jordan's apartment to purchase marijuana. N.T., 9/13/12, at 5. When his brother did not return, Appellant left his apartment to find him. *Id.* at 7. He found his brother lying in the street, bleeding, and tried to move him. *Id.* at 9. Appellant then ran to find the police when he was apprehended by them. *Id.* at 11.

On September 13, 2012, a jury found Appellant guilty of robbery,[3] criminal conspiracy/robbery,[4] theft by unlawful taking,[5] simple assault,[6] possessing an instrument of crime ("PIC"),[7] and burglary,[8] relating to the home invasion. On November 26, 2012, the court imposed consecutive sentences of 84-168 months' incarceration for robbery, 72-144 months' incarceration for criminal conspiracy/robbery, 12-24 months' incarceration

_____

[3] 18 Pa.C.S. § 3701(a)(1)(ii).

[4] 18 Pa.C.S. § 903/3710(a)(1)(ii).

[5] 18 Pa.C.S. § 3921(a).

[6] 18 Pa.C.S. § 2701(a)(1).

[7] 18 Pa.C.S. § 907(a).

[8] 18 Pa.C.S. § 3502(a).

for simple assault, and 72-144 months' incarceration for burglary. The court also imposed a concurrent sentence of 18-36 months' incarceration for PIC.

On December 6, 2012, Appellant filed post-sentence motions, which the court denied the next day. On March 1, 2013, Appellant filed an untimely *pro se* notice of appeal. The court appointed counsel and ultimately reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a notice of appeal on July 17, 2013, and on February 7, 2014, this Court affirmed Appellant's judgment of sentence.

On April 21, 2014, Appellant filed a timely *pro se* PCRA petition. The court appointed counsel on April 25, 2014, who filed a **Turner**[9]/**Finley**[10] no merit letter and a petition to withdraw as counsel on May 27, 2014. On June 5, 2014, the court issued a Pa.R.Crim.P. 907 notice and granted counsel's petition to withdraw. On July 2, 2014, the court denied Appellant's PCRA petition. Appellant filed a timely notice of appeal on July 14, 2014. The court did not order, and Appellant did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 21, 2014, the court issued a statement pursuant to Pa.R.A.P. 1925(a), incorporating its opinion and notice of intent to dismiss PCRA without a hearing pursuant to Pa.R.Crim.P. 907, dated June 5, 2014.

_____

[9] **Commonwealth v. Turner**, 544 A.2d 927 (Pa.1988).

[10] **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super.1988).

Appellant raises the following issues for our review:

> WHETHER THE PCRA COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION IN DENYING AND/OR OTHERWISE DISMISSING WITHOUT A HEARING APPELLANT'S CLAIMS THAT:
>
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR SUPPRESSION AND/OR EXCLUSION OF A PRE-TRIAL IDENTIFICATION OF APPELLANT WHERE SAID IDENTIFICATION WAS OBTAINED BY A PROCEDURE SO UNNECESSARILY SUGGESTIVE AND CONDUCIVE TO IRREPARABLE MISTAKEN IDENTIFICATION AS TO DENY APPELLANT DUE PROCESS OF LAW?
>
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO COMPLY WITH THE TECHNICAL NOTICE REQUIREMENTS OF PA.R.CRIM.P. 567, THEREBY PRECLUDING THE TESTIMONY OF DEFENSE WITNESS, LONI SHEROD, WHO WAS AVAILABLE AND WILLING TO TESTIFY AS AN ALIBI WITNESS ON APPELLANT'S BEHALF?
>
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF IRRELEVANT INFLAMMATORY AND UNDULY PREJUDICIAL PHOTOGRAPHS, AS CONTAINED ON A COMPACT DISC MARKED AS COMMONWEALTH EXHIBIT-"1", WHICH DEPICTED THE BODY OF APPELLANT'S DECEASED BROTHER, SHANTI BAYETE?
>
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF EVIDENCE THAT APPELLANT HAD PREVIOUSLY BEEN CONVICTED OF A FELONY DRUG OFFENSE?

Appellant's Brief at 4.

In all of his issues, Appellant argues his trial counsel was ineffective and he is entitled to a new trial or an evidentiary hearing. Appellant's issues merit no relief.

Our standard of review is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa.2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa.2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." **Commonwealth v. Robinson**, 82 A.3d 998, 1013 (Pa.2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa.Super.2014) (citation omitted).

Initially, we note that claims of ineffective assistance of counsel are cognizable under the PCRA and Appellant's PCRA petition is timely. **See** 42 Pa.C.S. §§ 9543(a)(2)(ii), 9545(b).

This Court follows the **Pierce**[11] test adopted by our Supreme Court to review claims of ineffective assistance of counsel:

> When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel which, in the

---

[11] **Commonwealth v. Pierce**, 527 A.2d 973 (Pa.1987).

- 6 -

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. We have interpreted this provision in the PCRA to mean that the petitioner must show: (1) that his claim of counsel's ineffectiveness has merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that the error of counsel prejudiced the petitioner-*i.e.*, that there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different. We presume that counsel is effective, and it is the burden of Appellant to show otherwise.

***Commonwealth v. duPont***, 860 A.2d 525, 531 (Pa.Super.2004), *appeal denied*, 889 A.2d 87 (Pa.2005), *cert. denied*, 547 U.S. 1129, 126 S.Ct. 2029, 164 L.Ed.2d 782 (2006) (internal citations and quotations omitted). The petitioner bears the burden of proving all three prongs of this test. ***Commonwealth v. Meadows***, 787 A.2d 312, 319-320 (Pa.2001). "If an appellant fails to prove by a preponderance of the evidence any of the ***Pierce*** prongs, the Court need not address the remaining prongs of the test." ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 911 (Pa.Super.2009), *appeal denied*, 990 A.2d 727 (Pa.2010) (citation omitted).

First, Appellant argues that because police transported him to the crime scene, in a patrol car, immediately after the crime, in handcuffs and covered with blood, the out-of-court identification of him as the robber by Jordan, Jarod, and Korrine was unduly suggestive. He claims that his counsel's failure to move for suppression of this pre-trial identification was ineffective assistance of counsel that entitles him to a new trial. We disagree.

- 7 -

> Where the challenge is to a failure to move for suppression of evidence, the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable.

**Commonwealth v. Melson**, 556 A.2d 836, 839 (Pa.Super.1989), *appeal denied,* 575 A.2d 111 (Pa.1990) (quoting **Kitrell v. Dakota***,* 540 A.2d 301, 306, (Pa.Super.1988), *appeal denied*, 565 A.2d 1167 (Pa.1988)).

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

**Commonwealth v. Kearney**, 92 A.3d 51, 65 (Pa.Super.2014), *appeal denied*, 101 A.3d 102 (Pa.2014).

Instantly, Jordan, Jarod, and Korrine positively identified Appellant as the person who had robbed Jordan's apartment when police brought him to them in a marked patrol car, immediately after the shooting. Jarod and

Korrine both testified that they had never seen Appellant's face, but they both noticed he was wearing dark clothing. Jordan testified that he saw Appellant's face when he was bending over his brother's dead body in the street around 2:00 a.m., under a streetlight, when he lifted his mask. He specifically recognized him as the older brother of Jordan's friend, Jeremiah.

A suppression court may have found that, under the totality of the circumstances, the identification by Jarod and Korrine was not reliable and granted a motion to suppress their out-of-court identification of Appellant. However, due to Jordan's certainty of Appellant's identity as someone he specifically recognized, it is unlikely the court would have found Jordan's identification of Appellant so suggestive as to give rise to an irreparable likelihood of misidentification.

Even if the court had granted a motion to suppress and found that all out-of-court identifications were unduly suggestive and tainted because the police presented Appellant to the witnesses while he was in handcuffs, in a police vehicle, immediately after the crime scene, Appellant's claim fails.

Although Appellant alleges that the out-of-court identification is the only evidence "linking Appellant to [Jordan's] apartment [and] the crimes committed therein",[12] Jordan subsequently identified Appellant in court.

---

[12] Appellant's Brief at 35.

"When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification had an origin sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Kendricks*, 30 A.3d 499, 506 (Pa.Super.2011), *appeal denied,* 46 A.3d 716 (Pa.2012) (internal quotations and citation omitted). The Commonwealth must prove this independent basis for identification through clear and convincing evidence. *See Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa.Super.2011), *appeal denied*, 29 A.3d 371 (Pa. 2011). "An independent basis is established when 'the in-court identification resulted from the criminal act and not the suggestive [identification procedure].'" *Id.*

> The factors a court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation.

*Kendricks*, 30 A.3d at 506.

With regard to the first factor, Jordan had an opportunity to view Appellant while he robbed the apartment, wearing dark clothing and a mask. Jordan then saw Appellant's face while Appellant was bent over his dead brother's body and lifted his mask. Jordan immediately recognized Appellant as someone he had seen before in the neighborhood, specifically, the brother of Jordan's friend, Jerimiah.

- 10 -

Regarding the second factor, due to the intensity of the robbery, it is likely Jordan was paying close attention, even though he had been smoking marijuana and had been knocked down and tased.

Regarding the accuracy of the description, Jordan testified that the two people who robbed his apartment were wearing: "Black jacket[s] and pantyhose over their face[s]. Just all black." N.T., 9/12/12, at 43. After the shot was fired, Jordan saw Appellant dragging his brother in the street and testified: "[Appellant] lifted up his mask and I was like, oh, I know who you are." *Id.* at 51. Jordan testified that he recognized Appellant as his friend's brother because he had seen him around before in the neighborhood.

Regarding the fourth and fifth factors, Jordan expressed certainty that Appellant was the person who robbed him, and he identified him immediately after the crime.

An analysis of these factors make it unlikely that a court would have granted a motion to suppress Jordan's out-of-court identification of Appellant. However, even if the court had granted a motion to suppress the out-of-court identification, Jordan's in-court identification was admissible because it resulted from the criminal act and not the suggestive identification procedure. *See Davis, supra.* This in-court identification, along with the corroborative stories of the other witnesses and Appellant's admission that he was at the crime scene, dragging his brother in the street,

implicated Appellant as one of the two robbers. Even if the court had granted a motion to suppress the out-of-court identification, there is not a reasonable probability that the result of the trial would have been more favorable to Appellant. *See Carelli, supra.*

Because Appellant was not prejudiced by the alleged error by counsel, an evidentiary hearing is unnecessary. *See Clemmons, supra.* Additionally, even if Appellant's claim had arguable merit, and counsel had no strategic basis for failing to file a motion to suppress the out-of-court identification, because he has failed to prove by a preponderance of the evidence the prejudice prong required by *Pierce*, his first claim fails. *See Fitzgerald, supra.*

In his second issue, Appellant claims his trial counsel failed to comply with the technical notice requirements of Pa.R.Crim.P. 567, which precluded Appellant's alibi witness Loni Sherod from testifying. Appellant concludes his counsel's ineffectiveness entitles him to an evidentiary hearing or a new trial. We disagree.

> Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant.

*Com. v. Chmiel*, 30 A.3d 1111, 1143 (Pa.2011) (quoting *Commonwealth v. Wayne*, 720 A.2d 456, 470 (Pa.1998)).

> To properly grant [relief on an ineffective assistance of counsel claim], the PCRA court would have to find that the … witness had relevant evidence that could have aided [appellant's] defense, and that there is a reasonable probability that the introduction of such evidence would have altered the outcome of the trial.

***Commonwealth v. Johnson***, 966 A.2d 523, 540 (Pa.2009).

In this case, it is not clear that Appellant's witness was available to testify on Appellant's behalf even if counsel had complied with the technical notice requirements of Pa.R.Crim.P. 567. The following transpired at trial:

> [DEFENSE COUNSEL]: There is another witness, Lonny Sherod, he's not here, again – he's wavering again. He's supposed to be here tomorrow...
>
> [PROSECUTOR]: …I'll object to that… If you look at the notice that he filed, it wasn't a notice. He didn't give me an address, he didn't give me a proffer as to where he was. And in the notice, he actually specifically said he would withdraw the notice if he didn't have that information. So I took him at his word, didn't file a response and until yesterday actually I didn't think Sherrod was going to be part of the case.
>
> [DEFENSE COUNSEL]: … I had to file it late… I did contact Mr. Sherrod on a few occasions. He seemed disinterested in me and did not get back to me. The only reason why I'm asking the court today is because I have to on behalf of my client because he came forward last night and I know it's late notice.
>
> THE COURT: No. I will not allow alibi.

N.T., 9/12/12, at 126-127.

Although the court did not conduct an evidentiary hearing, it is unlikely that Appellant would meet his burden of proving that the witness was available or that counsel had a reason to know that Appellant wanted to

present him as an alibi witness. Even if the court had permitted Mr. Sherod to testify, the transcript reveals that the witness was uncooperative and did not appear in court. Further, because Appellant only came forward the night before trial about his request to introduce Mr. Sherod as an alibi witness, counsel may not have been aware of the witness at all.

Even if Appellant could prove that his claim had arguable merit and that counsel had no reasonable strategy for failing to call Mr. Sherod as an alibi witness, Appellant again fails to prove by a preponderance of the evidence the prejudice prong established in *Pierce*.

Appellant admits to being at the crime scene, minutes after the crime, holding his bleeding brother in his arms in the street. Jordan testified that he saw Appellant rob his apartment and then lift his mask while standing over the body. The police testified that they saw Appellant immediately after the crime, covered in blood and wearing dark clothing. Appellant testified that he was coincidentally there at that time to check on his brother, who had departed to purchase marijuana from Jordan. If he had testified, Loni Sherod may or may not have corroborated Appellant's story. However, he would not have presented any new information that would have placed Appellant anywhere other than at the crime scene immediately after the crime. Thus, Appellant has failed to prove by a preponderance of the evidence that the outcome of the trial would have been different if Mr. Sherod had testified.

In his third issue, Appellant argues his counsel was ineffective for failing to object to "inflammatory and unduly prejudicial photographs" of Appellant's deceased brother, Shanti Bayete. Appellant's claim lacks arguable merit because Appellant was not on trial for the murder of his brother, and he fails to articulate how the photographs were prejudicial to his trial for burglary.

In his fourth issue, Appellant claims his trial counsel was ineffective for failing to object the admission of evidence that Appellant had been previously convicted of a felony drug offense. Again, Appellant's claim fails.

> We recognize that, pursuant to Pa.R.E. 403, relevant evidence may be excluded "if its probative value is outweighed by a danger of ... unfair prejudice." In a Comment to Rule 403, unfair prejudice is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." We are unable to conclude that, in a § 6105 persons not to possess firearms case, a defendant suffers unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of § 6105.
>
> Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the § 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime.

*Commonwealth v. Jemison*, 98 A.3d 1254, 1262 (Pa.2014).

"The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1184 (Pa.2011) (quoting ***Commonwealth v. Spotz***, 896 A.2d 1191, 1224 (Pa.2006).

Instantly, Appellant was charged with possessing a firearm, persons not to possess firearms. Counsel stipulated to Appellant's prior conviction as an element of this crime, and the court gave a curative instruction:

> Let me also say as to the stipulation to the fact that [Appellant] has a prior conviction which precludes him from owning a firearm, that prior conviction is not in any way, shape, or form any evidence of [Appellant's] guilt in this case. The sole purpose for the admission of that prior conviction is to show that [Appellant] is not allowed, under Pennsylvania law, to own a firearm because of it, and that is part of the charge that is – has been lodged against him at Count Number 11 and I will instruct you specifically on the elements of that charge at a later time.

N.T., 9/12/12, at 124-125.

Because the law presumes the jury followed the court's instruction, Appellant has suffered no prejudice.[13]

Order affirmed.

---

[13] Additionally, Appellant testified about illegal drug transactions and his knowledge and understanding of them. ***See*** N.T., 9/13/12, at 5, 17. Even if evidence of Appellant's prior conviction had not been introduced, the jury would have been aware of Appellant's prior bad acts.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2015