J-A30002-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES ANTHONY DIXSON | : | |
| | : | |
| Appellant | : | No. 1764 WDA 2017 |

Appeal from the Judgment of Sentence October 12, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010179-2016

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: FILED MARCH 27, 2019

Appellant, Charles Anthony Dixson, appeals from the judgment of sentence entered following his convictions of third-degree murder and carrying a firearm without a license.[1] We affirm.

On July 28, 2016, at approximately 8:30 p.m., twenty-two-year-old Robert Ray ("Victim") was shot in the head on Russellwood Avenue in Stowe Township, Pennsylvania. He died as a result of the gunshot. Approximately one hour before the shooting, police officers witnessed Appellant arguing with Victim on a nearby street. Subsequently, two eyewitnesses, Curtis Verner and James Beasock, were sitting on Mr. Verner's front porch on Russellwood Avenue when the shooting occurred. The eyewitnesses indicated that, just

_____

[1] 18 Pa.C.S. §§ 2502(c) and 6106(a)(1).

_____

* Retired Senior Judge assigned to the Superior Court.

before the shooting, Appellant and Victim had an argument on the front porch of the neighboring home, Victim ran, and Appellant followed with a gun in his hand. The eyewitnesses heard gunfire within seconds of Appellant pursuing Victim. Both of the arguments between Appellant and Victim were captured on surveillance cameras.

An arrest warrant was issued, and Appellant surrendered to police on August 3, 2016. Appellant was charged with the two crimes specified above. On March 16, 2017, Appellant filed a pretrial motion to suppress the identifications made by the eyewitnesses, which the trial court denied on June 6, 2017. On June 12, 2017, a jury convicted Appellant of both crimes. On October 12, 2017, the trial court sentenced Appellant to serve a term of incarceration of fifteen to thirty years for the third-degree murder conviction and a consecutive sentence of two and one-half to five years for the firearms violation. Appellant filed timely post-sentence motions, which the trial court denied. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the evidence presented by the Commonwealth was sufficient to support the conviction of [Appellant] for third degree murder?

2. Whether the Trial Court erred when it denied [Appellant's] pretrial motion to suppress an identification when the Commonwealth failed to demonstrate that the identification of [Appellant] was free of a substantial likelihood of misidentification?

3. Whether the Trial Court erred when it failed to give a jury instruction following the jury's question as to conspiracy liability when [Appellant] was never charged with the offense?

Appellant's Brief at 3.

Appellant first argues that the evidence was insufficient to support his conviction of third-degree murder. Appellant's Brief at 12-15. Appellant contends that the evidence did not show beyond a reasonable doubt that Appellant fired the fatal shot because no Commonwealth witness actually saw the shooting. Id. at 12. Thus, Appellant asserts that the Commonwealth failed to prove that he was the perpetrator of the crime.

Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Estepp, 17 A.3d 939, 943-944 (Pa. Super. 2011).

The Pennsylvania Crimes Code defines third-degree murder as any killing with malice that is not first or second-degree murder. 18 Pa.C.S. § 2502(c). Our Supreme Court has explained that "to convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought." Commonwealth v. Santos, 876 A.2d 360, 363-364 (Pa. 2005). "The use of a deadly weapon upon a vital part of the victim's body is more than sufficient to provide the element of malice." Commonwealth v. D'Ambro, 456 A.2d 140, 143 (Pa. 1983).

In addressing this issue, the trial court offered the following analysis:

> The facts in this case, when viewed in the light most favorable to the Commonwealth, support the guilty verdict on the charge of criminal homicide. [Appellant] alleges the Commonwealth failed to establish that [Appellant] "fired the fatal shot." To the contrary, there was sufficient evidence linking [Appellant] as the shooter. Specifically, immediately prior to the shooting, Mr. Verner observed [Appellant] across the street from the Victim and put gloves on. (June 8, 2017, T.T. 73-74.) Mr. Verner testified that he observed Bobbi Jo Dixson (Yankowski) hand [Appellant] something from her purse, and then saw [Appellant] walk across the street towards Victim. Id. Mr. Verner observed [Appellant] and the Victim argue on the front porch next to him. Id. at 75. Mr. Verner and Mr. Beasock both testified that while on the porch they both observed [Appellant] with a gun in his hand. Id. at 20, 76. Mr. Verner observed the Victim jump off the porch over the side railing and run between the houses. Id. at 78. Mr. Verner then observed [Appellant] follow the Victim in between the houses and raise his arm straight up from his side. Id. at 78-79. Mr. Verner then heard a "pop" and then observed [Appellant] run away. Id. at 79. The Victim was subsequently found shot in the head in the alley between the houses.
>
> The sequence of events as testified to by Mr. Verner was also corroborated by City video surveillance footage. [Appellant]

admitted to the events as testified to by Mr. Verner, except for denying having a gun and/or shooting Victim that day. Id. at 119-178. Additionally, [Appellant] admitted to an altercation between himself and the Victim earlier that day where police heard [Appellant] threatened [sic] the Victim. Id. at 159.

It is clear that the jury did not believe [Appellant's] claim that he was not the shooter. . . . Accordingly, the jury, as fact-finder, found the testimony of [Appellant] not credible and there was sufficient evidence as a matter of law to support a guilty verdict as to criminal homicide.

Trial Court Opinion, 6/6/18, at 7-8.

Likewise, our review of the record, viewed in the light most favorable to the Commonwealth, reflects that the Commonwealth presented sufficient evidence to establish that Appellant fired the gunshot that struck the victim in the head. At trial, the Commonwealth presented testimony from Stowe Township Police Officers James Duss and Leann Huffley. Officer Huffley testified that, at approximately 7:45 p.m., while conducting a traffic stop, she witnessed Appellant and Victim in a heated argument on the street. N.T., 6/8/17, at 4-5, 7. Officer Huffley stated that during the incident she heard Appellant say, "You a rat nigga. You know I don't play around. I'll get you." Id. at 6. Likewise, Officer Duss testified that, during the traffic stop occurring at 7:44 p.m. on July 28, 2016, he witnessed Appellant and Victim in an argument. N.T., 6/7/17, at 92-93. Officer Duss described Appellant's demeanor as "extremely irate." Id. at 93. Officer Duss offered the following testimony regarding what he observed:

[Appellant] was screaming at [Victim]. [Appellant] called him a "fucking rat nigga" a few times. I think it was about three times.

After that, [Appellant] said, "You know I don't fuck around. I'll get you."

And [Victim] — as this was going on, [Victim] was — it looked like he was trying to walk away from [Appellant], kind of was, like, throwing a hand at him, brushing him off, saying, you know, whatever, man, whatever, man. [Victim] actually walked by me on my traffic stop, and I said, hey, what's that all about?

[Victim] said, don't worry about it, man. He's been harassing me for months. [Victim] kind of just brushed me off as well and walked away.

Id. at 93-94.

In addition, the Commonwealth presented the testimony of Curtis Verner. Mr. Verner indicated that at 8:00 p.m. on July 28, 2016, he was seated on the front porch of his home on Russellwood Avenue, with his brother-in-law, Mr. Beasock. N.T., 6/8/17, at 65, 67. Mr. Verner observed Victim on the front porch of the neighboring house, and Appellant crossing the street and walking up the steps of the porch. Id. at 75-76. Mr. Verner explained that, from his vantage point, he could see Appellant had a gun in his hand. Id. at 76. Mr. Verner further explained that the interaction on the porch between Appellant and Victim became heated, and Victim jumped from the porch and ran between two houses. Id. at 78. Likewise, Appellant jumped down into the yard. Id. Mr. Verner testified that he watched Appellant run after Victim, saw Appellant raise his arm from this side, then he heard a "pop," and Appellant fled the scene. Id. at 78-80.

These facts, although circumstantial, when viewed in the light most favorable to the Commonwealth as the verdict winner, are sufficient for the

jury to conclude beyond a reasonable doubt that Appellant fired the gunshot that struck Victim in the head. Accordingly, the evidence is sufficient to prove that Appellant committed the crime of third-degree murder. Therefore, Appellant's contrary argument lacks merit.

Appellant next argues that the trial court improperly denied his motion to suppress an identification.[2] Appellant's Brief at 15-21. Appellant contends that the identification provided by Mr. Verner was tainted because the witness was shown suggestive photographs from a Facebook page. Id. at 17-18. Appellant further claims that the Commonwealth failed to establish that Mr. Verner had an independent basis for the identification. Id. at 18-21.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record …. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

_____

[2] We note that in his motion to suppress Appellant challenged the identifications made by both Mr. Verner and Mr. Beasock. Motion to Suppress, 3/16/17, at 1-3. However, Appellant now limits his argument to the identification made by Mr. Verner.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Commonwealth v. Freidl, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H)    The Commonwealth shall have the burden … of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." Commonwealth v. Moye, 836 A.2d 973, 976 (Pa. Super. 2003). An eyewitness's in-court identification of the accused is reliable where its basis is independent of suggestive pretrial procedures. Commonwealth v. Kendricks, 30 A.3d 499, 506 (Pa. Super. 2011) (citing Commonwealth v. Abdul-Salaam, 678 A.2d 342, 349 (Pa. 1996)). The Commonwealth must

show "by clear and convincing evidence that the identification was not induced by events occurring between the time of the crime and the in-court identification." Commonwealth v. Carter, 643 A.2d 61, 71 (Pa. 1994). To determine whether an independent basis exists for a witness's identification, a court must consider these five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation.

Kendricks, 30 A.3d at 506. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Moye, 836 A.2d at 976. In addition, a witness's prior familiarity with the accused creates an independent basis for the witness's in-court identification of the defendant. Commonwealth v. Ali, 10 A.3d 282, 303 (Pa. 2010); Commonwealth v. Johnson, 615 A.2d 1322, 1336 (Pa. Super. 1992).

In addressing this issue, the trial court offered the following discussion:

> [Appellant] filed a Motion to Suppress the eyewitnesses' identification of [Appellant] alleging the identification was unduly suggestive. Immediately prior to the shooting, two eyewitnesses, James Beasock and Curtis Verner, were sitting on the front porch of their residence and observed [Appellant's] interactions with Victim. (June 5, 2017, Suppression H.T., 6-20). Mr. Verner observed Bobbi Jo Dixon (Yankowski) and her brother, Robert Adamczyk, walking down Russellwood Avenue in Stow[e] Township. Id. at 7-8. Shortly thereafter, [Appellant] approached and spoke with Mrs. Dixon and Mr. Adamczyk across the street from Mr. Verner's residence, approximately 30 feet from his porch. Id. at 17-18. Mr. Verner then observed the Victim come from the side of his neighbor's house and attempt to enter the

front door. Id. at 10-14. [Appellant] ultimately approached the Victim on the neighbor's porch where the Victim was still attempting to enter the home. Id. at 17. Mr. Verner testified that he was able to see [Appellant's] face, appearance, clothing and hair from approximately 10 to 15 feet away. Id. at 17-18. Mr. Verner testified the Victim then jumped over a railing of the porch and ran between two houses and was followed by [Appellant]. Id. at 19-20. [Appellant] then lifted his arm and Mr. Verner heard a loud "pop". Id. at 21. Mr. Verner observed [Appellant] flee the scene and the Victim was found with a gunshot wound to the head. Id. at 22-23. Immediately after the incident while police were investigating the homicide, police interviewed Mr. Verner and Mr. Beasock. Id. at 23. During this initial conversation with the police, Mr. Verner was able to identify Bobbi Jo Dixson (Yankowski) because he had previously worked with her for approximately six months at Eat N' Park. Id. at 23. Police then showed Mr. Verner approximately four photographs from Facebook of [Appellant] and Mrs. Dixson. Id. at 23, 53-56. Mr. Verner made an initial identification of [Appellant] as the shooter. Id. at 23-24. Mr. Verner ultimately participated in a photo array at County homicide. Id. at 24. During this photo array Mr. Verner was unable to positively identify [Appellant]. Id. at 24. However, Mr. Verner indicated that a photograph stood out to him as [Appellant], but that he was unable to positively identify him because his hair was different in the photograph. Id. at 24. The photo array did not contain the same Facebook photographs previously showed to Mr. Verner. Id. at 47. [Appellant] alleges showing the initial four photographs of [Appellant] prior to the photo array was unduly suggestive and created a substantial likelihood of misidentification.

* * *

Here, this Court held that Mr. Verner credibly testified as to his ability to observe and perceive [Appellant] during the commission of the crime. Mr. Verner was interviewed by the police approximately one-half hour after the shooting. (June 5, 2017, Suppression H.T., 23). Mr. Verner testified that he was able to observe [Appellant] in good lighting from 30 feet and 10 to 15 feet away from him. Id. at 17, 18. Additionally, Mr. Verner was able to properly provide a description of [Appellant's] clothing, hair and body that matched the individual seen on the surveillance footage of the incident. Id. at 15, 19. Accordingly, this [c]ourt permitted Mr. Verner's in-court identification of [Appellant].

- 10 -

Trial Court Opinion, 6/6/18, at 3-6.

Upon review of the record, we likewise conclude that the trial court properly admitted the identification evidence. Mr. Verner indicated that it was still light outside at the time of the incident. N.T., 6/5/17, at 17-28. Mr. Verner testified that, prior to the shooting, he observed Appellant's face from across the street, a distance of approximately thirty feet. Id. at 17, 48. He also observed Appellant's face as Appellant was walking up to the neighboring front porch. Id. at 48. Mr. Verner stated he observed Appellant's hairstyle, which he described as being short and in cornrows. Id. at 19. Mr. Verner testified that, when Appellant was on the neighboring porch, he and Appellant were approximately ten to fifteen feet apart. Id. at 17. In addition, Mr. Verner observed that Appellant was wearing a blue t-shirt and dark basketball shorts. Id. at 15. Accordingly, we conclude that Mr. Verner possessed an adequate independent basis for the identification of Appellant, which was untainted by any suggestive photographs that Mr. Verner was shown after the incident. Therefore, upon consideration of Mr. Verner's opportunity to observe Appellant, we conclude that the in-court identification of Appellant was proper. Accordingly, the trial court did not abuse its discretion or commit an error of law in failing to suppress the identification provided by Mr. Verner.

Appellant last argues that the trial court abused its discretion in refusing to instruct the jury that conspiracy was not charged and, therefore, should

not be considered by the jury. Appellant's Brief at 22-26. Appellant asserts that "[t]he jury's question during deliberation regarding conspiracy liability indicated the jury's confusion relating to the offenses." Id. at 25. Appellant contends that the trial court's failure to give a jury instruction, specifying that Appellant was not charged with conspiracy, was prejudicial and an abuse of discretion that was not harmless error. Id. at 26. However, before we address the merits of Appellant's issue, we must determine whether the claim presented has been properly preserved for our consideration on appeal.

Our Courts have consistently ruled that, where a trial court directs a defendant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925, any issues not raised in that statement shall be waived. Commonwealth v. Bullock, 948 A.2d 818, 823 (Pa. Super. 2008) (citing Commonwealth v. Lord, 719 A.2d 306, 308 (Pa. 1998)). In Commonwealth v. Butler, 812 A.2d 631, 633 (Pa. 2002), our Supreme Court reaffirmed its holding in Lord and stated: "In Lord, however, this Court eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925 …. Thus, waiver under Rule 1925 is automatic." See also Commonwealth v. Oliver, 946 A.2d 1111, 1115 (Pa. Super. 2008) (noting that Lord "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

We are mindful that Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which a party plans to raise on

appeal. The absence of a trial court opinion addressing a particular claim poses a substantial impediment to meaningful and effective appellate review. Commonwealth v. Lemon, 804 A.2d 34, 36 (Pa. Super. 2002). Rule 1925 is thus a crucial component of the appellate process. Lemon, 804 A.2d at 37. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa. Super. 2001).

In addition, we are mindful that claims not raised before the trial court are waived. See Commonwealth v. Lopata, 754 A.2d 685, 689 (Pa. Super. 2000) (stating that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal."); Commonwealth v. Ryan, 909 A.2d 839, 845 (Pa. Super. 2006) (citing Commonwealth v. Gordon, 528 A.2d 631, 638 (Pa. Super. 1987) (reiterating that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief")).

Our review of the certified record reflects that on December 11, 2017, the trial court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days. The record further reflects that, following multiple extensions of time, Appellant filed his Rule 1925(b) statement on May 18, 2018. Appellant's Rule 1925(b) statement contains four issues.

Pa.R.A.P. 1925(b) Statement, 5/18/18, at 2-3. The only issue presenting a claim challenging the trial court's instructions to the jury provides as follows:

> a. The trial court's jury instruction as to the charge of conspiracy was improper, as [Appellant] was never charged with such an offense. The improper charge allowed the jury to convict on the theory of guilt not charged or supported by the evidence. Jury Trial Transcript ("J.T.T."), 6/8/17 [sic] at 6-11.

Pa.R.A.P. 1925(b) Statement, 5/18/18, at 2 (footnote omitted) (emphases added).

In his Rule 1925(b) statement, Appellant never specifically raised the instant theory that the trial court erred in failing to give a jury instruction on the uncharged crime of conspiracy. Rather, Appellant alleged that the trial court gave an improper instruction "as to the charge of conspiracy." Id. Thus, Appellant properly preserved for review a claim alleging error on the part of the trial court in presenting an improper jury instruction as to the charge of conspiracy. Because Appellant alleged that the trial court gave an improper instruction, in its written opinion the trial court focused upon the fact that it never gave such an instruction to the jury. Specifically, the trial court addressed Appellant's claim presented in his Pa.R.A.P. 1925(b) statement as follows:

> I. The [c]ourt did not give a jury instruction as to the charge of conspiracy.
>
> It should be noted at the outset that [Appellant] was never charged with a crime involving conspiracy. However, during the jury's deliberations, the jury posed a question to the court as follows: "If [Appellant] is complicit in a conspiracy, is he guilty of

any of the charges?" (June 6, 2017 T.T., 6.) In response to this question, this Court advised the jury as follows:

> With respect to the final question that you gave me, if [Appellant] is complicit in a conspiracy, is he guilty of any the charges. Let me remind you that [Appellant] has been charged with criminal homicide and carrying a firearm without a license. Consequently, I would tell you or advise you and instruct you to review the evidence in this case as you heard it in this courtroom and apply the law to the evidence as you find it, the law being that which I read to you and allowed you to take with you into the jury room.

> Id. at 14. Consequently, as [Appellant] was not charged with a crime involving conspiracy, this [c]ourt explicitly refused to charge the jury on the theory of conspiracy (even though [Appellant] erroneously alleges in this appeal that the Court did in fact do so) and therefore, [Appellant's] ... issue is without merit.

Trial Court Opinion, 6/6/18, at 2-3. Accordingly, because Appellant now attempts to challenge whether the trial court abused its discretion in refusing to instruct the jury that conspiracy was not charged and therefore, should not be considered by the jury, we conclude that this argument is waived because Appellant failed to present this specific issue to the trial court in his Rule 1925(b) statement.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2019

- 15 -